# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CIVIL ACTION NO.

| | |
|---|---|
| Lubica Mijac, as the Estate Trustee of the Estate of Corey Michael Mijac and Christopher Jeffries and Samantha Berry, as the Estate Trustees of the Estate of Benjamin Caleb Jeffries<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | **COMPLAINT** |

## COMPLAINT

COMES NOW Plaintiffs, by and through undersigned counsel and for their cause of action file this Complaint, and allege on information and belief:

## PARTIES

1. Plaintiff Lubica Mijac is the duly appointed Estate Trustee of the Estate of Corey Michael Mijac, deceased, who was a resident of Ontario, Canada.

2. Plaintiff Christopher Jeffries and Samantha Berry, are the duly appointed Estate Trustees of the Estate of Benjamin Caleb Jeffries. The Estates are pending in the Ontario Superior Court of Justice.

3. Plaintiffs bring this action on behalf of the Estates and legal beneficiaries as a result of the death of the decedents.

4. Defendant the United States of America is a body politic which for purposes of this litigation operates through its executive branch an agency of government known as the Federal Aviation Administration (FAA), charged with responsibility under the Federal Aviation Act of 1958, as amended, to ensure the safety of flight, and in which control of all airspace over the United States and its territories is vested.

## JURISDICTION AND VENUE

5. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and plaintiffs have complied with all administrative prerequisites to the institution of suit.

6. This Court has jurisdiction of the instant action pursuant to 28 U.S.C. § 1331, in that this case arises under the Federal Tort Claims Act, and pursuant to

28 U.S.C. § 1346, in that this Court has original jurisdiction over all claims against the United States of America and the various agencies thereof, including the FAA.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1402(b), in that the accident that gives rise to this litigation occurred in this district.

## BACKGROUND

8. Plaintiff Luba Mijac is the duly appointed Estate Trustee of the Estate of Corey Michael Mijac, deceased

9. Plaintiffs, Christopher Jeffries and Samantha Berry, are the duly appointed Estate Trustees of the Estate of Benjamin Caleb Jeffries, deceased.

10. The FAA is and was an agency of the United States government in which control of all airspace over the United States and its territories, including Pennsylvania, is exclusively vested.

11. Further, the Federal Aviation Act of 1958, as amended by the Department of Transportation Act of 1967, authorizes and directs the Secretary of Transportation to provide necessary facilities and personnel for the protection and regulation of air traffic.

12. The Secretary of Transportation is further authorized and directed to prescribe air traffic rules and regulations governing the flight of aircraft, the efficient utilization of navigable airspace, and the prevention of controlled flight into terrain.

13. Among the duties of the FAA is to supply through its employees and/or agents, flight following and monitoring in accordance with the FAA internal procedures set out in FAA Order JO 7110.65, titled Air Traffic Control.

14. At all times material hereto, the Federal Aviation Administration (FAA) was a United States governmental entity charged with ensuring safe air transportation by formulating, enacting and enforcing safety standards that apply to air commerce.

15. On and before October 16, 2016, the FAA had been providing air traffic control services at Cleveland Air Route Traffic Control Center (ARTCC). Cleveland ARTCC oversees airspace over portions of Maryland, Michigan, New York, Ohio, Pennsylvania, West Virginia, as well as the southernmost portion of Ontario, Canada.

16. On and before October 16, 2016, Cleveland ARTCC was acting as a duly authorized agent of the United States of America, under its supervision, authority and control.

17. On and before October 16, 2016, it was the duty of the FAA's Office of Air Traffic System Effectiveness to evaluate air traffic operations and periodically evaluate the air traffic controllers employed at Cleveland ARTCC.

## ALLEGATIONS RELEVANT TO ALL CLAIMS

18. On October 16, 2016, about 1957 eastern daylight time, a Piper PA 28-161, Canadian registration C-GYSN, collided with trees and terrain near Austin, Pennsylvania, killing all on board.

19. Decedents Mijac and Jefferies were occupants on C-GYSN.

20. The fatal flight originated from Richmond International Airport (RIC) Richmond, Virginia and was destined for St. Catharines/Niagara District Airport (CYSN), St. Catharines, Ontario, Canada about 1654 Eastern Daylight Time.

21. The pilot of the mishap aircraft filed an Instrument Flight Rules (IFR) flight plan for the flight from RIC to CYSN.

22. C-GYSN was owned by the St. Catharines Flying Club and was one of five aircraft operated by the flying club that flew to the United States on October 12, 2016. One of the five aircraft returned to CYSN on October 15, 2016. While the remaining four departed for the return trip on October 16, 2016.

23. At approximately 1933, on October 16, 2019, the accident airplane established contact with Cleveland ARTCC at its cruise altitude of 6,000 feet while over Pennsylvania.

24. At 1944, the Cleveland ARTCC transmitted the following: "CGYSN I am showing areas of moderate precipitation seems like it's gonna be just off your left and right side your current track is uh going right through the middle of what I

am showing there and then in about 20 miles or so I'm showing another area of moderate heavy precipitation haven't had anyone deviate through that area."

25. C-GYSN did not respond to the 1944 communication to Cleveland ARTCC.

26. At 2345, Cleveland ARTCC transmitted: "CGYSN showing areas of moderate precipitation if you need to deviate just advise."

27. C-GYSN responded: "Yeah we'll deviate CGYSN we're turning (unintelligible) 20 degrees to the left."

28. Cleveland ARTCC responded: "CGYSN roger and direct to Saint Catherine's when you are able."

29. At approximately 1945 C-GYSN entered Instrument Meteorological Conditions (IMC).

30. At 1951, Cleveland ARTCC transmitted: "And CGYSN I have uh another aircraft out ahead you at your almost 11:30 and 20 miles 6,000 says just some light uh rain and smooth."

31. There was no response to this communication from C-GYSN.

32. At approximately 1952, the aircraft entered an area of 30 to 50 dBZ reflectivity. This reflectivity corresponds to light to heavy rain with severe turbulence, updrafts and downdrafts, small hail and lightning.

33. At 2357, Cleveland ARTCC transmitted: "CGYSN I see you turning to the south there are you okay?"

34. There was no response from C-GYSN and shortly thereafter the aircraft was lost from radar and impacted the ground, killing everyone on board including Decedents Corey Mijac and Benjamin Jefferies.

35. At all times mentioned hereto, the C-GYSN was or should have been under surveillance by air traffic controllers employed and trained by the FAA who were charged with duties including navigational assistance, timely furnishing of weather data, surveillance and other guidance, instructions and air traffic control services pursuant to duties prescribed in FAA Order 7110.65 and other rules, regulations, procedures and standards.

36. Section 2-6-4 of FAA Order 7110.65 requires air traffic controllers to "Issue pertinent information on observed/reported weather and chaff areas by defining the area of coverage in terms of azimuth (by referring to the12-hour clock) and distance from the aircraft or by indicating the general width of the area and the area of coverage in terms of fixes or distance and direction from fixes."

37. Any precipitation observed by the Cleveland ARTCC controller would have been moderate to heavy which is dangerous to a light aircraft like C-GYSN. This was known or should have been known to the controller.

38. Pursuant to FAA Order 7110.65, Air Traffic Controllers have the responsibility to issue precipitation in a descriptive manner that will be useful to the pilot and provide routing and or radar vectors when the safety of the aircraft is a factor.

39. Two other aircraft from the flying club that flew in that area prior to C-GYSN were provided radar vectors around the adverse weather by Cleveland ARTCC and both aircraft avoided the adverse weather and landed safely.

40. As a direct and proximate cause of the negligence of the defendant, including its air traffic controllers, managers, and supervisors, C-GYSN received faulty instructions, while over Pennsylvania, and as a result entered dangerous weather conditions causing the aircraft to lose control and crash, resulting in the death of Corey Mijac and Benjamin Jefferies.

41. Had the air traffic controller and the supervisors and managers carried out their duties and responsibilities in accordance with all applicable rules, regulations, practices, policies and procedures, including FAA Order 7110.65, the crash would have been averted.

## SURVIVAL ACTION
(42 Pa..C.S. § 8302)

42. Decedents, during the course of the accident, suffered injury and damages caused by the negligence, actions, and omissions of Defendants, which injury and damages include, but are not limited to:

      a. <u>Pain and suffering, including suffering</u> in contemplation of their impending deaths;

      b. Shock and terror;

      c. Mental and emotional distress;

      d. Loss of the decedent's earning power, and

      e. Other damages allowed under the Statute

43. Decedents' causes of action for their injuries and damages survive their deaths and pass to their estates.

## WRONGFUL DEATH ACTION
## (42 Pa..C.S. § 8301)

44. Decedents met their untimely deaths as a direct result of the aforementioned negligence, actions, and omissions of Defendants.

45. Plaintiffs have experienced great mental anguish, suffering, bereavement, and loss of society, advice, companionship, comfort, grief, sorrow, protection, and pecuniary benefit as a result of the deaths of Plaintiffs' decedents.

46. Plaintiffs and the statutory beneficiaries are informed and believe, pursuant to the Pennsylvania Wrongful Death Statute, they are entitled to a judgment against Defendants for an award of actual damages in an amount to be determined by the trier of fact and for any additional relief this Court deems just and proper.

# COUNT I
# NEGLIGENCE

47. Plaintiffs re-aver and re-allege by reference all other paragraphs of the complaint as if fully restated herein.

48. The United States owed a duty to Plaintiffs' decedents to exercise reasonable care in providing air traffic control services.

49. On and before October 16, 2016, defendant, the United States of America was negligent and in breach of its duties and superior duties described herein, in that the FAA personnel responsible for providing air traffic control and flight following to the accident aircraft, and the FAA personnel responsible for supervising, instructing, qualifying and training said personnel:

    a. Failed to prevent an occurrence of a light aircraft under Air traffic control from entering an area of dangerous weather in controlled airspace;

    b. Failed to use their best judgment to ensure the safety of the occupants of the accident aircraft;

    c. Failed to issue proper weather advisories as required under FAA Order 7110.65 2-6-4;

    d. Failed to adequately warn the aircraft of the adverse weather;

    e. Failed to maintain situational awareness and did not take action to actively vector the aircraft safely around the adverse weather;

    f. Failed to provide appropriate radar navigational guidance;

    g. Failed to take action as required under FAA Order 7110.65 5-6-1 to address an unsafe condition;

h. Failed to provide clear, concise standard instructions to the accident pilot as required by relevant rules, practices and regulations;

i. Failed to properly and adequately train, certify, and/or re-certify the air traffic control personnel responsible for the accident flight;

j. Failed to properly or adequately evaluate, monitor and supervise the air traffic control personnel responsible for the accident flight;

k. Failed to have present adequate experienced and competent personnel to appropriately handle the situation involved;

l. Failed to warn C-GYSN of the immediate and extreme danger to his aircraft;

m. Defendant United States was negligent for other reasons to be developed in discovery and presented at trial.

50. As a direct and proximate result of the aforesaid acts and/or omissions by the defendant the United States of America, Corey Mijac and Benjamin Jefferies suffered injuries resulting in their death on October 16, 2016, and Corey Mijac and Benjamin Jefferies' Estates and lawful beneficiaries sustained damages and losses as described herein.

## COUNT II
## WRONGFUL DEATH

51. Plaintiffs re-aver and re-allege by reference all other paragraphs of the complaint as if fully restated herein.

52. As a direct and proximate result of the negligence of the Defendants, Plaintiffs and Plaintiffs' decedents suffered injuries and death.

53. The damages law of Pennsylvania applies to this action. The Estates and the survivors of Plaintiffs' decedents have in the past, do in the present and will in the future continue to suffer the following damages:

   a. All economic and non-economic damages allowed by law;
   b. A measurable and significant period before and after the first and subsequent impacts, during the fire, as well as before the death of Plaintiffs' decedents which Plaintiffs' decedents sustained significant personal injuries, including conscious and physical pain and suffering, pre and post impact fright and terror, fear of impending death, mental anguish, emotional distress, and other severe injuries, suffering, distress and harm for a measurable period of time prior to death;
   c. Loss of being able to live life and the enjoyment of life;
   d. Loss of earnings of Plaintiffs' decedents from the date of death, less lost support and services, excluding contributions in kind, with interest;
   e. Loss of gross earning power and earning capacity;
   f. Loss of net accumulations;
   g. Loss of past earnings;
   h. Loss of future and prospective earnings;
   i. Loss of inheritance;
   j. Full pecuniary loss of the decedent;
   k. Loss of prospective estate accumulations;
   l. Post-mortem, funeral, memorials and other expenses which have been incurred due to the decedent's death that have become a charge against the Estates or that were paid by or on behalf of the decedents;
   m. Loss of support and services in money or in kind from the date of the decedent's death to the extent of his normal life expectancy;

n. Loss of the decedent's companionship, instruction, guidance, and physical and mental pain and suffering from the date of the decedent's death;

o. Grief, emotional distress, and sorrow of the family and beneficiaries;

p. Loss of enjoyment of life of his surviving family and beneficiaries;

q. Loss of the value of not having to live one's life alone;

r. Loss of care, comfort, companionship and consortium;

s. Loss of guidance and tutelage;

t. Loss of life's pleasures;

u. Loss of earnings;

v. Loss of society;

w. Loss of companionship;

x. Loss of love;

y. Loss of affection;

z. Loss of solace;

aa. Loss of protection;

bb. Loss of moral guidance;

cc. Loss of counsel;

dd. Loss of moral support;

ee. Loss of familial care;

ff. Loss of advice;

gg. Punitive exemplary damages as allowed by law;

hh. Pre-judgment and post interest;

ii. Costs and attorneys' fees; and

jj. Any and all other damages to which each decedent, and his representatives, estate, survivors and beneficiaries are lawfully entitled.

WHEREFORE, Plaintiffs demand judgment against Defendant for all damages, and interest recoverable for the Defendants' conduct, including attorneys' fees and other such relief allowed by law as the Court and jury deem just.

DATED this 18th day of October, 2019.

Respectfully submitted,

By: s/ Corey S. Suda\_\_\_\_\_
EDWARD J. CIARIMBOLI, ESQUIRE
Pa. Bar ID# 85904
COREY S. SUDA, ESQ.
Pa. Bar ID# 321940
183 Market Street, Suite 200
Kingston, PA 18704
570-714-4878

MARY SCHIAVO. (Applying for PHV)
JAMES R. BRAUCHLE (Applying for PHV)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843-216-9138
Email: mschiavo@motleyrice.com
jbrauchle@motleyrice.com

*Attorneys for Plaintiffs*